E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JULIUS J. NAM (Cal. Bar No. 288961)
Assistant United States Attorney
Public Corruption and Civil Rights Section
COURTNEY N. WILLIAMS (Cal. Bar No. 339301)
Assistant United States Attorney
Riverside Branch Office
    3403 10th Street
    Riverside, California 92501
    Telephone: (951) 276-6942/368-1473
    Facsimile: (951) 276-6202
    E-mail:   julius.nam@usdoj.gov
              courtney.n.williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

09/01/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

          v.

PAUL JOHN GOLLOGLY,

        Defendant.

ED CR No. **5:23-cr-00171-SSS**

PLEA AGREEMENT FOR DEFENDANT
PAUL JOHN GOLLOGLY

    1.   This constitutes the plea agreement between PAUL JOHN GOLLOGLY ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of bribery concerning programs receiving federal funds in Riverside County and elsewhere. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1

<u>DEFENDANT'S OBLIGATIONS</u>

2       2.   Defendant agrees to:

3            a.   Give up the right to indictment by a grand jury and,

4  at the earliest opportunity requested by the USAO and provided by the

5  Court, appear and plead guilty to a single-count information in the

6  form attached to this agreement as Exhibit A or a substantially

7  similar form, which charges defendant with bribery concerning

8  programs receiving federal funds in violation of 18 U.S.C.

9  § 666(a)(1)(B).

10           b.   Not contest facts agreed to in this agreement.

11           c.   Abide by all agreements regarding sentencing contained

12 in this agreement.

13           d.   Appear for all court appearances, surrender as ordered

14 for service of sentence, obey all conditions of any bond, and obey

15 any other ongoing court order in this matter.

16           e.   Not commit any crime; however, offenses that would be

17 excluded for sentencing purposes under United States Sentencing

18 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

19 within the scope of this agreement.

20           f.   Be truthful at all times with the United States

21 Probation and Pretrial Services Office and the Court.

22           g.   Pay the applicable special assessment at or before the

23 time of sentencing unless defendant has demonstrated a lack of

24 ability to pay such assessments.

25           h.   At or before the time of sentencing, make a

26 prejudgment payment by delivering a certified check or money order to

27 the Fiscal Clerk of the Court in the amount of $30,160.60, to be

28 applied to satisfy defendant's anticipated criminal debt.  Payments

1   may be made to the Clerk, United States District Court, Fiscal

2   Department, 255 East Temple Street, Room 1178, Los Angeles,

3   California 90012.

4         i.   Defendant agrees that any and all criminal debt

5   ordered by the Court will be due in full and immediately.  The

6   government is not precluded from pursuing, in excess of any payment

7   schedule set by the Court, any and all available remedies by which to

8   satisfy defendant's payment of the full financial obligation,

9   including referral to the Treasury Offset Program.

10        j.   Complete the Financial Disclosure Statement on a form

11   provided by the USAO and, within 30 days of defendant's entry of a

12   guilty plea, deliver the signed and dated statement, along with all

13   of the documents requested therein, to the USAO by either email at

14   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

15   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

16   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

17   criminal debt shall be assessed based on the completed Financial

18   Disclosure Statement and all required supporting documents, as well

19   as other relevant information relating to ability to pay.

20        k.   Authorize the USAO to obtain a credit report upon

21   returning a signed copy of this plea agreement.

22        l.   Consent to the USAO inspecting and copying all of

23   defendant's financial documents and financial information held by the

24   United States Probation and Pretrial Services Office.

25       3.   Defendant further agrees:

26        a.   To forfeit all right, title, and interest in and to

27   any and all monies, properties, and/or assets of any kind, derived

28   from or acquired as a result of, or used to facilitate the commission

of, or involved in, the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

        i.  A Silver MacBook Pro with black skull sticker; Serial Number: W89358BQ7XJ;

        ii.  A Dell laptop computer with a cord charger and a battery; Model: P05F; Service Tag: JTY59N1;

        iii. An Apple desktop w/cord; Model: A1312; Serial Number: D25GFOLODHJV;

        iv.  A Black Apple iPhone with case; Model: A1387; FCCID: BCG-E2430A;

        v.  A White Apple iPhone SE with clear case; Model: A1662; Serial Number: 355434073771638;

        vi.  A White Apple iPhone for Phone Number, 909-208-9043; PIN: 3102;

        vii. A Silver Apple iPhone; Model: A1778; ID: BCG-Z3091A1C5790-E309;

        viii.  A Black LG cell phone; Serial Number: 608CYWC926113;

        ix.  An Apple iPad in black case; Model: A1337; Serial Number GB033N5LETV;

        x.  An Apple iPad; Model: A1490; Serial Number: F9FMP425FLML;

        xi.  A Western Digital hard drive; Serial Number: WXEX05351444;

        xii. A Seagate external hard drive, 2TB; Serial Number: NA95J2MX;

1          xiii.    Additional thumb drives, flash drives, SD

2 cards, DVDs, backup digital storage tapes seized from defendant's

3 residence in Temecula, California, on September 9, 2020; and

4          xiv. Documents, financial records, notes, law

5 enforcement records, badges, and insignia seized from defendant's

6 residence in Temecula, California, on September 9, 2020

7 (collectively, the "Forfeitable Assets").

8        b.   To the Court's entry of an order of forfeiture at or

9 before sentencing with respect to the Forfeitable Assets and to the

10 forfeiture of the assets.

11        c.   To take whatever steps are necessary to pass to the

12 United States clear title to the Forfeitable Assets, including,

13 without limitation, the execution of a consent decree of forfeiture

14 and the completing of any other legal documents required for the

15 transfer of title to the United States.

16        d.   Not to contest any administrative forfeiture

17 proceedings or civil judicial proceedings commenced against the

18 Forfeitable Assets.  If defendant submitted a claim and/or petition

19 for remission for all or part of the Forfeitable Assets on behalf of

20 himself or any other individual or entity, defendant shall and hereby

21 does withdraw any such claims or petitions, and further agrees to

22 waive any right he may have to seek remission or mitigation of the

23 forfeiture of the Forfeitable Assets.

24        e.   Not to assist any other individual in any effort

25 falsely to contest the forfeiture of the Forfeitable Assets.

26        f.   Not to claim that reasonable cause to seize the

27 Forfeitable Assets was lacking.

28

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

4.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (a) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (b) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (c) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

1          b.    Abide by all agreements regarding sentencing contained

2    in this agreement.

3          c.    At the time of sentencing, provided that defendant

4    demonstrates an acceptance of responsibility for the offense up to

5    and including the time of sentencing, recommend a sentence of

6    imprisonment no higher than 18 months.

NATURE OF THE OFFENSE

8    6.    Defendant understands that for defendant to be guilty of

9    the crime charged in the single-count information, that is, bribery

10   concerning programs receiving federal funds, in violation of Title

11   18, United States Code, Section 666(a)(1)(B), the following must be

12   true: (a) defendant corruptly solicited or demanded for the benefit

13   of any person or accepted or agreed to accept anything of value from

14   any person; (b) defendant intended to be influenced or rewarded in

15   connection with any business, transaction, or series of transactions

16   of the City of Murrieta involving anything of value of $5,000 or

17   more; and (c) the City of Murrieta received, in any one year period,

18   benefits in excess of $10,000 under a federal program involving a

19   grant, contract, subsidy, loan, guarantee, insurance, or other form

20   of Federal assistance.

PENALTIES

22   7.    Defendant understands that the statutory maximum sentence

23   that the Court can impose for a violation of Title 18, United States

24   Code, Section 666(a)(1)(B), is: 10 years' imprisonment; a 3-year

25   period of supervised release; a fine of $250,000 or twice the gross

26   gain or gross loss resulting from the offense, whichever is greatest;

27   and a mandatory special assessment of $100.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant agrees to make full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with that count.  The parties currently believe that the applicable amount of restitution is approximately $30,160.60, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10.   Defendant understands that the Court will also order forfeiture of the Forfeitable Assets, which defendant agrees are

8

among the properties to be forfeited under the single-count information pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

11.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

//

//

1

<u>FACTUAL BASIS</u>

2    13.  Defendant admits that defendant is, in fact, guilty of the

3    offense to which defendant is agreeing to plead guilty.  Defendant

4    and the USAO agree to the statement of facts provided below and agree

5    that this statement of facts is sufficient to support a plea of

6    guilty to the charge described in this agreement and to establish the

7    Sentencing Guidelines factors set forth in paragraph 15 below but is

8    not meant to be a complete recitation of all facts relevant to the

9    underlying criminal conduct or all facts known to either party that

10   relate to that conduct.

11   <u>Defendant's Employment with the City of Murrieta as a Public Official</u>

12      At all times relevant to the charge in the information,

13   defendant was a public official employed by and contracted with the

14   City of Murrieta ("City").  During that time, defendant was an agent

15   of the City working as a reserve police officer, detective, and

16   consultant for the Murrieta Police Department ("MPD"), an agency of

17   the City.  The City was a local government located in Riverside

18   County, within the Central District of California.  Annually, the

19   City received benefits in excess of $10,000 under a Federal program

20   involving a grant, contract, subsidy, loan, guarantee, insurance, and

21   other forms of Federal assistance in each of the calendar years 2012

22   through 2020.

23      As a public official and a law enforcement officer in a

24   sensitive position with the City, defendant owed a fiduciary duty to

25   the citizens of the City to perform the duties and responsibilities

26   of his office free from bias, conflicts of interest, self-enrichment,

27   self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

28      In March 2013, defendant became an agent of the City after he

1  was hired by MPD to lead MPD's purported anti-money laundering

2  program ("AML program").  In that role, defendant handled and

3  provided direction to certain confidential informants ("CIs")

4  registered with MPD, including CIs who were not citizens of the

5  United States and who did not have a lawful immigration status in the

6  United States, and who, therefore, needed specific and periodic

7  authorizations from the Federal government to enter and work in the

8  United States.  The handling and management of such CIs constituted a

9  business, transaction, and series of transactions of the City having

10  a value of $5,000 or more.  Defendant had significant power and

11  influence over the CIs, including the power to cause termination or

12  deactivation of CIs from the program.

13  Person A: Confidential Informant with Murrieta Police Department

14       At all times relevant to the charge in the information, Person A

15  was a CI who was registered with MPD.  Person A was a citizen of

16  Colombia, without a visa or a lawful permanent status in the United

17  States, who needed specific and periodic authorizations from the

18  Federal government to enter and work in the United States.  Person A

19  was also a wealthy art dealer who had significant business interests

20  in Colombia, Mexico, Panama, Spain, and the United States, which

21  required him to travel frequently among these and other countries.

22  For example, Person A owned art galleries in New York and Spain and a

23  hotel in Mexico.

24       In April 2013, defendant registered Person A as a CI with MPD.

25  Defendant had previously registered Person A as a CI with a police

26  department in Florida when defendant was employed by that department.

27  At least until September 2020 when defendant left MPD, Person A

28  remained registered as a CI and was not deactivated from MPD.

Defendant's Facilitation of Immigration Benefits for Person A

Between April 2013 and February 2020, defendant, as an agent of the City, facilitated and assisted with Person A's acquisition of various immigration benefits.  As described further below, those benefits included: (1) facilitation of applications and approvals for Significant Public Benefit Parole ("SPBP") and employment authorization from the U.S. Department of Homeland Security ("DHS") which allowed Person A to enter and work in the United States for approximately one year at a time; (2) assistance provided to Person A with each of Person A's entries into the United States; and (3) assistance with Person A's permanent residency application process.

First, in November 2013, December 2014, and March 2016, defendant coordinated MPD's applications on behalf of Person A for Person A to receive new or renewed approvals to enter and reenter the United States under DHS's SPBP program as well as to work in the United States.  Each time, defendant drafted MPD's letter of support for Person A and completed and signed the SPBP application and employment authorization application forms.  Each time, DHS approved the two applications.  Without the SPBP and employment authorization benefits, Person A would not have been able to legally enter the United States and pursue his significant business interests in the United States.

In the 2014 and 2016 MPD letters in support of Person A, defendant made false assertions about Person A's work as a CI.  In the two letters, defendant represented that Person A's CI work resulted in arrests, seizures of large amounts of money and drugs, and additional investigations when, in fact, those statements were incorrect.  Information that Person A provided to the MPD as part of

the purported AML program did not result in any arrests, seizures of money or drugs, or additional investigations.  Nonetheless, defendant made those false assertions in the SPBP and employment authorization applications for Person A in order to facilitate Person A's acquisition of SPBP and employment authorization benefits.

Second, between June 2012 (beginning when defendant signed up Person A as a CI with a police department in Florida) and February 2020, defendant facilitated Person A's entries into the United States after Person A's international trips by being on "stand-by" for communications from Person A or from U.S. border authorities regarding any entry problems that Person A might encounter upon presentation for admission into the United States.  On at least 25 occasions, toward the end of Person A's international trips but before his return to the United States, Person A would send text messages to defendant to inform him of Person A's arrival date, arrival location, and flight information.  Person A had an understanding and agreement with defendant that, if Person A were to encounter problems when seeking re-entry into the United States, defendant would assist Person A, including by communicating with immigration officials to verify and vouch for Person A's work for MPD and other law enforcement agencies.  Defendant's availability for assistance to Person A was in defendant's position as an agent of MPD.  On at least five different occasions, after receiving information regarding Person A's arrival at the San Ysidro Port of Entry at the U.S.-Mexico border, defendant personally drove to San Ysidro to meet Person A and facilitate Person A's incident-free re-entry into the United States.

Third, in 2020, upon learning of difficulties that Person A was

experiencing in his U.S. permanent residency application process,
defendant, using his position as an agent of MPD, attempted to
provide assistance to Person A by: (1) causing a United States
Immigration and Customs Enforcement deportation officer to search
Person A's files with federal immigration agencies to locate any
negative information that immigration authorities might be
considering; (2) causing an employee of the City to conduct a
database search, including a criminal history check, of Person A for
any negative information that immigration authorities might be
considering; and (3) drafting an un-transmitted letter of support for
Person A where, defendant described Person A as one who "has enabled
multiple high level investigations to be brought to successful
conclusions," which was not true.

Defendant facilitated Person A's SPBP and employment
authorization benefits, provided assistance with Person A's entries
into the United States, and assisted with Person A's permanent
residency application process – in connection with MPD's operation of
a money laundering investigation utilizing CIs who were non-citizens
and without a lawful immigration status.

Defendant's Acceptance of Benefits from Person A

In return for, and intending to be influenced and rewarded in
connection with, defendant's facilitation of and assistance with
various immigration benefits for Person A, defendant solicited,
accepted, and agreed to accept things of value from Person A for the
benefit of defendant, defendant's family members, and defendant's
friends.  Those benefits included the following:

(1)  On December 4, 2013, while Person A's SPBP and employment
Authorization applications that defendant prepared and facilitated

were pending with DHS, defendant solicited Person A for "a couple of tickets" to the December 6, 2013 Art Basel Miami art fair in Miami, Florida.  Person A provided the tickets.

(2)  In June 2014, defendant solicited Person A to provide job leads for Person C, a family friend, who was "on the market for another job."  In 2015, Person A hired Person C as an employee of a company Person A operated.

(3)  In July 2014, Person A helped arrange for lodging for Person D and Person E (both close relatives of defendant) and Person F (a friend of defendant and his close relatives) at Person A's hotel in Mexico.  Moreover, while Person D, Person E, and Person F were staying at Person A's hotel, on July 12, 2014, defendant asked Person A to put "some wine and flowers" in Person D's room.  In response, Person A caused wine and flowers to be placed in Person D's room without charge.

(4)  On November 12-14, 2014, after defendant asked Person A for free lodging for Person B (a close relative of defendant) and Person B's friend at Person A's hotel in Mexico, Person A gave two nights' free lodging to Person B and Person B's friend.  This took place approximately two weeks before defendant prepared and completed Person A's second SPBP and employment authorization applications to DHS.  MPD submitted the applications to DHS on December 1, 2014.

(5)  On November 25, 2014, after defendant asked Person A to "hook us up" for hotel lodging for Person G and Person G's friend who were planning to travel to Colombia in January 2015, Person A arranged for five nights' free lodging in two hotels in Colombia for Person G and Person G's friend.

(6)  From July 2016 through November 2016, acting upon

defendant's request, Person A made several attempts to help Person B secure a job with a major international philanthropist, whom Person A knew well.  Those efforts included Person A bringing Person B to a lunch with the philanthropist, sending Person B's resume to the philanthropist, speaking with the philanthropist about Person B's potential employment with the philanthropist, and arranging a meeting between Person B and an associate of the philanthropist.

(7)  On July 27, 2018, after defendant proposed that defendant pay $10,859 and Person A pay $29,600 for Person B's four months' rent for a New York City apartment, Person A sent $29,600 by wire from his company's Bank of America account ending in 7103 to a Silicon Valley Bank account ending in 7032, held by Company A, which managed the apartment that Person B was seeking to rent.

(8)  On March 29, 2019, in response to Person B's request, Person A provided, cost-free, two tickets for admission to an art exhibit in New York City for the benefit of Person B and Person D.

(9)  On December 17, 2019, Person A paid $560.60 by wire using his credit card to Company B, an upscale New York City restaurant, for a dinner served to defendant, Person B, Person D, and others.

Defendant's use of his official title, employment, and authority with MPD to facilitate and assist with the acquisition of immigration benefits for Person A, as described above, and the acceptance of direct and indirect financial and other benefits from Person A by defendant and defendant's close relatives and friends, as described above, constituted a scheme to defraud the City and its citizens of their right to the honest services of defendant through bribery, materially false and fraudulent pretenses and representations, and the concealment of material facts.

1                <u>SENTENCING FACTORS</u>

2     14.  Defendant understands that in determining defendant's

3 sentence the Court is required to calculate the applicable Sentencing

4 Guidelines range and to consider that range, possible departures

5 under the Sentencing Guidelines, and the other sentencing factors set

6 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7 Sentencing Guidelines are advisory only, that defendant cannot have

8 any expectation of receiving a sentence within the calculated

9 Sentencing Guidelines range, and that after considering the

10 Sentencing Guidelines and the other § 3553(a) factors, the Court will

11 be free to exercise its discretion to impose any sentence it finds

12 appropriate up to the maximum set by statute for the crime of

13 conviction.

14     15.  Defendant and the USAO agree to the following applicable

15 Sentencing Guidelines factors:

16    Base Offense Level:          11     [U.S.S.G. § 2C1.2(a)(1)]

17    Specific Offense
     Characteristics:

18      More Than One Gratuity    +2     [U.S.S.G. § 2C1.2(b)(1)]

19      Value of Gratuity: More   +4     [U.S.S.G. § 2C1.2(b)(2)]
      Than $15,000

20      Public Official in       +4     [U.S.S.G. § 2C1.2(b)(3)]
      Sensitive Position

21      Facilitation of Entry of a +2     [U.S.S.G. § 2C1.2(b)(4)]
      Person into the U.S.

22

23 Defendant and the USAO reserve the right to argue that additional

24 specific offense characteristics, adjustments, and departures under

25 the Sentencing Guidelines are appropriate.

26     16.  Defendant understands that there is no agreement as to

27 defendant's criminal history or criminal history category.

28

17.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

18.   Because:

a.   The United States Sentencing Commission has proposed that U.S.S.G. § 4C1.1 be added to the Sentencing Guidelines;

b.   The proposed U.S.S.G. § 4C1.1 would decrease a defendant's total Sentencing Guidelines offense level by two levels if he has zero criminal history points and satisfies ten other enumerated criteria;

c.   Such an addition is anticipated to become effective on November 1, 2023; and

d.   The parties agree that the proposed U.S.S.G. § 4C1.1 would be applicable to defendant if it was in effect when defendant is sentenced; therefore

e.   The government will recommend a two-level downward variance to defendant's Sentencing Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a).

19.   If the district court grants the two-level variance described paragraph 18, or a greater variance, then defendant knowingly and intentionally gives up any right to seek a further reduced sentence -- via direct appeal, motion (including under 18 U.S.C. § 3582(c)), or collateral attack -- based on U.S.S.G. § 4C1.1 or any comparable two-level Sentencing Guidelines reduction for offenders with zero criminal history points.

20.   Neither paragraph 18 nor paragraph 19 modifies the Sentencing Guidelines calculations in paragraph 15.

1      <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

2      21.  Defendant understands that by pleading guilty, defendant

3 gives up the following rights:

4           a.    The right to persist in a plea of not guilty.

5           b.    The right to a speedy and public trial by jury.

6           c.    The right to be represented by counsel -- and if

7 necessary have the Court appoint counsel -- at trial.  Defendant

8 understands, however, that, defendant retains the right to be

9 represented by counsel -- and if necessary have the Court appoint

10 counsel -- at every other stage of the proceeding.

11          d.    The right to be presumed innocent and to have the

12 burden of proof placed on the government to prove defendant guilty

13 beyond a reasonable doubt.

14          e.    The right to confront and cross-examine witnesses

15 against defendant.

16          f.    The right to testify and to present evidence in

17 opposition to the charges, including the right to compel the

18 attendance of witnesses to testify.

19          g.    The right not to be compelled to testify, and, if

20 defendant chose not to testify or present evidence, to have that

21 choice not be used against defendant.

22          h.    Any and all rights to pursue any affirmative defenses,

23 Fourth Amendment or Fifth Amendment claims, and other pretrial

24 motions that have been filed or could be filed.

25      <u>WAIVER OF STATUTE OF LIMITATIONS</u>

26      22.  Having been fully advised by defendant's attorney regarding

27 application of the statute of limitations to the offense to which

28 defendant is pleading guilty, defendant hereby knowingly,

voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty  because of the expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

<u>WAIVER OF APPEAL OF CONVICTION</u>

23.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

24.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 24 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $30,160.60; (e) to the

extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

26.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $30,160.60.

//

//

## RESULT OF WITHDRAWAL OF GUILTY PLEA

27.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

28.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

29.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

//

//

COURT AND UNITED STATES PROBATION AND

PRETRIAL SERVICES OFFICE NOT PARTIES

30. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

33.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney


_____            August 25, 2023
JULIUS J. NAM                               _____
Assistant United States Attorney            Date


_____            8/23/23
PAUL JOHN GOLLOGLY                          _____
Defendant                                   Date

                                            8/23/23
_____            _____
BRIAN GURWITZ                               Date
Attorney for Defendant
PAUL JOHN GOLLOGLY

1        CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorney.  I understand

5    the terms of this agreement, and I voluntarily agree to those terms.

6    I have discussed the evidence with my attorney, and my attorney has

7    advised me of my rights, of possible pretrial motions that might be

8    filed, of possible defenses that might be asserted either prior to or

9    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10   of relevant Sentencing Guidelines provisions, and of the consequences

11   of entering into this agreement.  No promises, inducements, or

12   representations of any kind have been made to me other than those

13   contained in this agreement.  No one has threatened or forced me in

14   any way to enter into this agreement.  I am satisfied with the

15   representation of my attorney in this matter, and I am pleading

16   guilty because I am guilty of the charge and wish to take advantage

17   of the promises set forth in this agreement, and not for any other

18   reason.

19   _____          ___8/23/23_____

20   PAUL JOHN GOLLOGLY                        Date
     Defendant

21

22

23        CERTIFICATION OF DEFENDANT'S ATTORNEY

24       I am PAUL JOHN GOLLOGLY's attorney.  I have carefully and

25   thoroughly discussed every part of this agreement with my client.

26   Further, I have fully advised my client of his rights, of possible

27   pretrial motions that might be filed, of possible defenses that might

28   be asserted either prior to or at trial, of the sentencing factors

                                 25

set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     8/23/23
BRIAN GURWITZ                          Date
Attorney for Defendant
PAUL JOHN GOLLOGLY

26

# **EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>PAUL JOHN GOLLOGLY,<br><br>            Defendant. | ED CR No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 666(a)(1)(B): Bribery Concerning Programs Receiving Federal Funds; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

[18 U.S.C. § 666(a)(1)(B)]

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.    Defendant PAUL JOHN GOLLOGLY ("GOLLOGLY") was a public official employed by and contracted with the City of Murrieta ("City").  Defendant GOLLOGLY was an agent of the City working as a reserve police officer, detective, and consultant for the Murrieta Police Department ("MPD"), an agency of the City.  Defendant GOLLOGLY managed an anti-money laundering program for MPD, and, in that role, he handled and provided direction to certain confidential informants registered with MPD.  Defendant GOLLOGLY's contract with the City was terminated in or about September 2020.

1

2.    As a public official employed by the City, defendant
GOLLOGLY owed a fiduciary duty to the citizens of the City to perform
the duties and responsibilities of his office free from bias,
conflicts of interest, self-enrichment, self-dealing, concealment,
deceit, fraud, kickbacks, and bribery.

3.    Person A was a confidential informant who was registered
with MPD from April 2013 onward.  Person A was a citizen of Colombia
without a visa or a lawful permanent status in the United States.
Person A needed specific and periodic authorizations from the Federal
government to enter and work in the United States.  Person A was also
a wealthy art dealer and collector with substantial business
interests in Colombia, Mexico, Panama, Spain, and the United States
and whose business required Person A to travel frequently among these
and other countries.

4.    Person B was a close relative of defendant GOLLOGLY.

5.    The City was a local government located in Riverside
County, California.  Annually, the City received benefits in excess
of $10,000 under a Federal program involving a grant, contract,
subsidy, loan, guarantee, insurance, and other forms of Federal
assistance in each of the calendar years 2012 through 2020.

DEFENDANT GOLLOGLY'S SCHEME

Between in or about March 2013 and in or about September 2020,
in Riverside County, within the Central District of California, and
elsewhere, defendant GOLLOGLY, an agent of the City, corruptly
solicited, demanded, accepted, and agreed to accept something of
value from a person to benefit himself and others, intending to be
influenced and rewarded in connection with a business, transaction,
and series of transactions of the City having a value of $5,000 or

2

more.  Specifically, defendant GOLLOGLY solicited, demanded, accepted, and agreed to accept something of value from Person A to benefit defendant GOLLOGLY himself, Person B, and other close relatives and friends, including: (1) $29,600 in rent for Person B's apartment in New York City; (2) rooms at hotels in Mexico and Colombia; (3) employment and employment leads; and (4) dinner at an upscale restaurant, intending to be influenced and rewarded in connection with, among other things, the operation of a money laundering investigation utilizing confidential informants who were not citizens of the United States and who did not have lawful immigration status in the United States, and who, therefore, needed specific and periodic authorizations from the Federal government to enter and work in the United States.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Nine of this Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

4

1    substantially diminished in value; or (e) has been commingled with

2    other property that cannot be divided without difficulty.

3

4                                         E. MARTIN ESTRADA
                                          United States Attorney
5

6

7                                         MACK E. JENKINS
                                          Assistant United States Attorney
8                                         Chief, Criminal Division

9                                         SEAN D. PETERSON
                                          Assistant United States Attorney
10                                        Chief, Riverside Branch Office

11                                        JULIUS J. NAM
                                          Assistant United States Attorney
12                                        Public Corruption & Civil Rights
                                          Section
13
                                          COURTNEY N. WILLIAMS
14                                        Assistant United States Attorney
                                          Riverside Branch Office
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Stephanie Ascencio, declare:

That I am a citizen of the United States and a resident of or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, California 92501; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:  **PLEA AGREEMENT FOR DEFENDANT PAUL JOHN GOLLOGLY**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email delivery, as follows: **SEE ATTACHED**

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **September 1, 2023,** in Riverside, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Stephanie Ascencio*
Stephanie Ascencio
Legal Assistant

**ATTACHMENT**

Brian Gurwitz
1422 Edinger Ave. #100
Tustin, CA 92780
brian@gurwitzlaw.com